UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| STEPHANIE ANDERSON, PHETSAMONE "MAO" DARY, MORIAH DEMERS, CHAD ENGELBY, THOMAS ENGLISH, DEANNA HOBBS, KEN JOHNSON, BRIAN KRUSCHKE, JEFFREY DALLMAN, KATHRYN EASTMAN, and ALAN HAYDEN,<br><br>                     Plaintiffs,<br><br>     vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>                     Defendant. | CIV. 17-5010-JLV<br><br><br>ORDER |

**BACKGROUND**

Multiple plaintiffs filed this action against defendant Wells Fargo Bank,

N.A.   (Docket 6).   Each plaintiff was an employee of defendant who was fired

in approximately the last five years because of the plaintiff's criminal

background information.   Id. at pp. 3, 6, 12, 16, 22, 23, 25, 29-30, 32-33, 36

& 39-40; see Docket 12 at p. 8.   Plaintiffs' complaint[1] advances 31 claims

against defendant.   Id.   The court has jurisdiction pursuant to 28 U.S.C.

§ 1332 because there is complete diversity between the parties and the

amount in controversy exceeds $75,000.   Id. at p. 2.   Federal question

---

[1]This order refers to plaintiffs' amended complaint simply as plaintiffs' complaint.

jurisdiction pursuant to 28 U.S.C. § 1331 provides the court with jurisdiction over plaintiffs' claims grounded in federal law.    Id.

The complaint includes several state law causes of action.    Each plaintiff alleges a fraud and deceit claim.    Id. at pp. 4-5, 10-11, 14-15, 18-19, 21-24, 27-28, 30-31, 34-35, 37-38 & 41-42.    Aside from Mr. Engelby, each plaintiff brings a claim for punitive damages.    Id. at pp. 5-6, 11, 15, 19-20, 24-25, 28, 21-32, 35, 39 & 43.    Five plaintiffs assert promissory estoppel claims against defendant: Ms. Anderson, Mr. Dary, Ms. Demers, Ms. Eastman and Mr. Hayden.    Id. at pp. 4, 8, 17, 37 & 41.    Only Mr. Dary alleges fraudulent inducement and fraudulent concealment claims against defendant.    Id. at pp. 8-10.

The complaint also sets forth violations of federal law in connection with each plaintiff.    Plaintiffs collectively allege defendant violated the Fair Credit Reporting Act ("FCRA") because it "failed to comply with the procedural protections and requirements of the FCRA when it used the consumer reports of Plaintiffs, and thousands of other employees, to make adverse employment decisions resulting in their termination."    Id. at p. 43.    The plaintiffs claim defendant's conduct in firing them violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and constituted a conspiracy to violate RICO, 18 U.S.C. § 1962(d).    Id. at pp. 49-68.    The core of plaintiffs' RICO claims is defendant fired them for the "purpose of terminating employees en masse, reducing payroll, eliminating earned and

2

accrued employee bonuses and benefits, and depressing the relevant job market, all under the fraudulent pretext of compliance with federal regulation." Id. at p. 61.

Defendant filed a motion to dismiss some of plaintiffs' claims. (Docket 11). Defendant asserts the court should dismiss plaintiffs' FCRA claim under Federal Rule of Civil Procedure 12(b)(1) because plaintiffs lack standing to bring their FCRA claim. Id. at p. 3. Defendant argues plaintiffs' FCRA and RICO claims should be dismissed under Rule 12(b)(6) because they are time-barred. Id. According to defendant, Mr. English and Mr. Dallman's state law claims are also time-barred, warranting Rule 12(b)(6) dismissal. Id. Aside from timeliness, defendant argues the court should dismiss plaintiffs' RICO claims under Rule 12(b)(6) because they fail to state a claim upon which the court can grant relief. Id. Defendant alternatively moves the court to strike plaintiffs' complaint under Rule 12(f) to the extent it "fails to contain a short and plain statement of the claims upon which the Plaintiffs are seeking relief . . . ." Id. at p. 4 (citing Fed. R. Civ. P. 8(a)).

**DISCUSSION**

**I.   Rule 12(b)(1) motion to dismiss**

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III [of the United States Constitution.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "Standing . . . is a jurisdictional requirement, and thus 'can be raised by the court sua sponte at any time during

3

the litigation.' " Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1156-57 (8th Cir. 2008) (quoting Delorme v. United States, 354 F.3d 810, 815 (8th Cir. 2004)).   "The [standing] doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.   In this way, the law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role . . . ." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (internal citations omitted) (internal quotation marks omitted).

"The 'irreducible constitutional minimum' of standing consists of three elements." Id. (quoting Lujan, 504 U.S. at 560).   "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citations omitted).   "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).   "In assessing a plaintiff's Article III standing, we must 'assume that on the merits the plaintiffs would be successful in their claims.' " Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency, 836 F.3d 963, 968 (8th Cir. 2016) (quoting Muir v. Navy Fed. Credit Union, 529 F.3d 1100, 1106 (D.C. Cir. 2008)).

The second and third elements of standing tend to be straightforward, but the injury element is harder to pin down.   The United States Supreme Court

recently ruled on the injury element in Spokeo.    Spokeo clarified the requirements that the injury suffered is "concrete and particularized . . . ." Spokeo, 136 S. Ct. at 1548 (citing Lujan, 504 U.S. at 560) (internal quotation marks omitted).    A particularized injury "affect[s] the plaintiff in a personal and individual way[,]" as opposed to an injury affecting an undifferentiated collection of people.    Id. (citations omitted).    A concrete injury is one that "actually exist[s]."    Id.    It can be a tangible injury, such as physical pain, or it can be intangible, like curtailing someone's right to free speech.    Id. at 1549 (citing Pleasant Grove City v. Summum, 555 U.S. 460 (2009)).    Spokeo acknowledged Congress can create statutes providing people rights, which, if violated, may result in an Article III injury.    Id.; see, e.g., Fed. Election Comm'n v. Akins, 524 U.S. 11, 20-25 (1998) (holding that certain voters' "inability to obtain information" Congress chose to make accessible to them yielded an Article III injury).    However, Spokeo held "Article III standing requires a concrete injury even in the context of a statutory violation. . . . [A plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."    Spokeo, 136 S. Ct. at 1549.

Defendant argues the court should dismiss plaintiffs' FCRA claim because they lack standing.    (Dockets 19 at pp. 18-23).    For the FCRA allegation, the core issue is whether plaintiffs set forth violations of substantive rights sufficient to constitute a concrete injury or whether he asserts "a bare procedural violation, divorced from any concrete harm . . . ."    Spokeo, 136 S. Ct. at 1549.

5

The court notes this precise issue divides many United States District Courts.  Compare Thomas v. FTS USA, LLC, 193 F. Supp. 3d 623, 629-37 (E.D. Va. 2016); Banks v. Cent. Refrigerated Servs., Inc., No. 2:16-CV-356, 2017 WL 1683056, at *3 (D. Utah May 2, 2017), with In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litigation, MDL No. 2615, 2017 WL 354023, at *4-11 (D.N.J. Jan. 24, 2017); Fisher v. Enterprise Holdings, Inc., No. 15-CV-00372, 2016 WL 4665899, at *2-4 (E.D. Mo. Sept. 7, 2016).[2]  In Thomas and Banks, the courts concluded the FCRA violations before them set forth concrete injuries because they involved substantive rights.  See Thomas, 193 F. Supp. 3d at 637 ("Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information."); Banks, 2017 WL 1683056, at *3 (noting "[s]everal courts have recognized that multiple sections of the FCRA provide consumers with a [substantive] right to information").  In contrast, the courts in In re Michaels Stores and Fisher determined the FCRA claims did not constitute more than procedural rights, which alone do not amount to concrete injuries.  See In re Michaels Stores, Inc., 2017 WL 354023, at *7 ("I respectfully disagree with Thomas's conclusion that the disclosure requirements set forth in § 1681b(b)(2)(A)(i) are substantive rather than procedural."); Fisher, 2016 WL 4665899, at *4-5.

In reaching its conclusion about the nature of the rights the FCRA confers, Thomas started, "as Spokeo instructs, [by] look[ing] to the common law and to

---

[2]Defendant cites many cases finding no concrete injury in FCRA violations. (Docket 12 at pp. 20-22).

the judgment of Congress, as reflected in the FCRA, to determine whether the violations of that statute alleged by [the plaintiff] constitute concrete injuries that satisfy the case or controversy requirement."   Thomas, 193 F. Supp. 3d at 631.

The Spokeo Court itself explained the background of Congress passing the FCRA:

> The FCRA seeks to ensure "fair and accurate credit reporting." § 1681(a)(1).   To achieve this end, the Act regulates the creation and the use of "consumer report[s][3] by "consumer reporting agenc[ies]"[4] for certain specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment.   See §§ 1681a(d)(1)(A)-(C); § 1681b. . . .   [T]he FCRA applies to companies that regularly disseminate information bearing on an individual's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."   § 1681a(d)(1).
> The FCRA imposes a host of requirements concerning the creation and use of consumer reports. . . .   [T]he Act requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports, § 1681e(b); to

---

[3]"The Act defines the term 'consumer report' as: 'any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.'
15 U.S.C. § 1681a(d)(1)."

[4]" 'The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.'   § 1681a(f)."

notify providers and users of consumer information of their responsibilities under the Act, § 1681e(d); to limit the circumstances in which such agencies provide consumer reports "for employment purposes," § 1681b(b)(1); and to post toll-free numbers for consumers to request reports, § 1681j(a).

Spokeo, 136 S. Ct. at 1545.

The sections at issue in this case are 15 U.S.C. §§ 1681b(b)(2)(A) & 1681b(b)(3)(A).   (Docket 6 at pp. 43-49).   Section 1681b(b)(2)(A) stated in full reads:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of  the report by that person.

The Thomas court held § 1681b(b)(2)(A) establishes two rights.   Thomas, 193 F. Supp. 3d at 631-32.   "First, it establishes a right to specific information in the form of a clear and conspicuous disclosure," which is supported by "the textual command that the disclosure be clear and conspicuous."   Id. at 631. "Second, [it] establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances."   Id. at 631-32.   Thomas held those rights "are clearly substantive, and neither technical nor procedural."   Id. at 632; see Demmings v. KKW Trucking, Inc., No. 14-CV-494, 2017 WL 1170856, at *8 (D. Or. Mar. 29, 2017) ("The Court finds

8

persuasive these, and other cases that similarly hold that the Sections 1681b(b)(2)(B) and (b)(3)(B) and similar provisions of the FCRA establish substantive informational and privacy rights held by the consumer."); Mix v. Asurion Ins. Servs. Inc., No. CV-14-02357, 2016 WL 7229140, at *6 (D. Ariz. Dec. 14, 2016) ("Violations of FCRA that unfairly deprive a consumer of relevant information, or obtain consent for a background check without a statutorily-proper disclosure, implicate the harms Congress identified in FCRA, and thus cause concrete harms."); Moody v. Ascenda USA Inc., No. 16-CV-60364, 2016 WL 5900216, at *5 (S.D. Fla. Oct. 5, 2016) (holding § 1681b(b)(2)(A) confers substantive rights); Meza v. Verizon Commc'ns, Inc., No. 16-CV-0739, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016) (same).

In Syed v. M-I, LLC, the United States Court of Appeals for the Ninth Circuit adopted the view that § 1681b(b)(2)(A) is a grant of substantive rights. 853 F.3d 492, 499 (9th Cir. 2017).   The Ninth Circuit held:

> Syed alleges more than a "bare procedural violation."   The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process.   The authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check.   By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy."   See Spokeo, 136 S. Ct. at 1549 (quoting Lujan, 504 U.S. at 580 (Kennedy, J., concurring)).

The court is aware other courts have come to the opposite conclusion: that § 1681b(b)(2)(A) consists of procedural rights the violation of which does not amount to an Article III injury.   See In re Michaels Stores, Inc., 2017 WL 354023, a *7-8; Landrum v. Blackbird Enters., LLC, No. CV 16-0374, 2016 WL 6075446, at *3-4 (S.D. Tex. Oct. 3, 2016).   The court respects the well-reasoned rulings in In re Michaels Stores and Landrum.   But the court disagrees with their analysis of the FCRA.

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."   Spokeo, 136 S. Ct. at 1549.   The FCRA's backdrop the Ninth Circuit explained in Syed supports concluding § 1681b(b)(2)(A) grants substantive rights.   In 1996, Congress amended the 26-year-old FCRA with the specific concern that "prospective employers were obtaining and using consumer reports in a manner that violated job applicants' privacy rights."   Syed, 853 F.3d at 496 (citing S. Rep. No. 104-185 at 35 (1995)).   "The disclosure and authorization provision codified at 15 U.S.C. § 1681b(b)(2)(A) was intended to address this concern by requiring the prospective employer to disclose that it may obtain the applicant's consumer report for employment purposes and providing the means by which the prospective employee might prevent the prospective employer from doing so—withholding of authorization."   Id. (citing S. Rep. No. 104-185 at 35)).   Section 1681b(b)(2)(A) advances Congress' broader goals of "ensuring accurate credit reporting, promoting efficient error correction, and protecting privacy."   Id. at 496-97.   By enacting the FCRA, Congress found there "is a need to insure

10

that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). As time moved forward and technology developed, the "modern information age has shined a spotlight on information privacy, and on the widespread use of consumer credit reports to collect information in violation of consumers' privacy rights." Syed, 853 F.3d at 495.

Turning to § 1681b(b)(2)(A) with this background in mind, it is clear the statute takes the consumer's personal information and grants the consumer substantive protections regarding its release. To protect the consumer's personal information, § 1681b(b)(2)(A) grants the consumer a right to information in a disclosure form and a right to privacy an employer "may invade only under stringently defined circumstances." See Thomas, 193 F. Supp. 3d at 631-32. If an employer does not secure the consumer's disclosure authorization as the statute requires, the employer may "unfairly deprive a consumer of relevant information, or obtain consent for a background check without a statutorily-proper disclosure, [which] implicate[s] the harms Congress identified in FCRA, and thus cause[s] concrete harms." Mix, 2016 WL 7229140, at *6. "It is clear from the statute's legislative history that Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports. To that end, it was Congress' judgment, as clearly expressed in §§ 1681b(b)(2) and (3), to afford consumers rights to information and privacy." Thomas, 193 F. Supp. 3d at 633.

11

Defendant argues it did not violate the FCRA's disclosure and authorization requirements because plaintiff was not confused by the disclosure form.   (Docket 12 at pp. 21-22).   The fundamental point is that defendant's deviation from the statute's disclosure standards did not vitiate plaintiff's authorization for defendant to obtain his background information.   However, the "proper inquiry is whether a procedural violation [of § 1681b(b)(2)(A)] creates a 'risk of real harm.'" Mix, 2016 WL 7229140, at *5 (quoting Spokeo, 136 S. Ct. at 1549-50).   The court finds an employer "does create a real risk of harm" when it uses "a disclosure that, because it is merely one section of a larger document, results in 'information overload' which inhibits a consumer's ability to agree to a background check with full knowledge of their rights and the potential consequences." Id.   "Drawing all reasonable inferences in favor of the non-moving party," Syed, 853 F.3d at 499, the court finds plaintiff's allegations that the disclosure was "wordy" and not in a "stand-alone document" sufficiently show the disclosure created a risk of real harm.   (Docket 6 at p. 47).   Plaintiff's claims grounded in § 1681b(b)(2)(A) allege a concrete injury under Article III.

The second section of the FCRA at issue in this case, § 1681b(b)(3)(A), provides:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under section 1681g(c)(3) of this title.

12

Thomas held this section "delineates substantive rights[]" because it "provides a consumer with a right to certain information (the consumer report and a description of rights conferred by the FCRA) before an employer takes adverse action based on that report.   By requiring that the consumer receive the foregoing information <u>before</u> adverse action is taken, the statute provides the consumer with a right to review the report and discuss it with his putative or current employer before adverse action is taken against him."   <u>Thomas</u>, 193 F. Supp. 3d at 632 (emphasis in original) (citing H.R. Rep. No. 10-486, 103d Cong. 2d Sess. 30-31 (1994)).

The FCRA background outlined above applies to § 1681b(b)(3)(A) just as it does § 1681b(b)(2)(A).   <u>See</u> <u>supra</u> pp. 10-11.   The reasoning underlying the court's determination § 1681b(b)(2)(A) grants substantive informational and privacy rights "is applicable not only to the disclosure requirements of § 1681b(b)(2)(A) but also to the notice requirements of § 1681b(b)(3)(A) . . . ." <u>Mix</u>, 2016 WL 7229140, at *6.   Specifically, § 1681b(b)(3)(A) provides a consumer with a substantive right to information prior to adverse employment action.   <u>See</u> <u>Thomas</u>, 193 F. Supp. 3d at 632.   Plaintiff's claims grounded in § 1681b(b)(3)(A) constitute an Article III concrete injury.

Defendant claims because the information regarding plaintiff's background was accurate, he fails to allege a concrete injury.   (Docket 12 at p. 20).   "But the broad principle that the holding in *Thomas* rests on—that the violation of statutory rights may in itself be a concrete injury—is not limited to

13

situations where the violation of those rights results in the dissemination of false information."  Mix, 2016 WL 7229140, at *5.   Focusing on whether there is a risk of real harm, "[i]n the context of employment-related background checks, information that is true but amenable to contextual explanation, delivered without time to provide that explanation, does create a risk of real harm."  Id. (citing Thomas, 193 F. Supp. 3d at 638).   The crux of the injury here is not whether the information is accurate, it is defendant depriving plaintiff of his right to information before being fired.

Defendant argues that finding plaintiff's FCRA claims constitute injuries is inconsistent with the United States Court of Appeals for the Eighth Circuit decision Braitberg v. Charter Commc'ns, Inc., 836 F.3d 925 (8th Cir. 2016). (Docket 12 at p. 23).   Braitberg involved a cable company's retention of Mr. Braitberg's personal identifying information after he canceled his cable services, which violated the Cable Communications Policy Act ("CCPA").   Braitbertg, 836 F.3d at 926-27.   Mr. Braitberg claimed a violation of his privacy rights because the CCPA provides "[a] cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information [by the subscriber] or pursuant to a court order."   47 U.S.C. § 551(e); see Braitberg, 836 F.3d at 927.   The Eighth Circuit held Mr. Braitberg lacked standing because he "identifies no material risk of harm from the retention; a speculative or hypothetical risk is insufficient.   Although there is a

14

common law tradition of lawsuits for invasion of privacy, the retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts." Braitberg, 836 F.3d at 930. The United States Court of Appeals for the Third Circuit interprets Braitberg "as creating a requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit . . . ." In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 637 (3d Cir. 2017).

The court finds its determination that plaintiff alleges a concrete injury under the FCRA is consistent with Braitberg. First, the court disagrees with In re Horizon's view of Braitberg. In discussing Mr. Braitberg's failure to identify a "material risk of harm," the Eighth Circuit was not raising the standing bar—it was explaining why the CCPA claim was " 'a bare procedural violation, divorced from any concrete harm.' " Braitberg, 836 F.3d at 930 (quoting Spokeo, 136 S. Ct. at 1549). Even if In re Horizon's interpretation is correct, plaintiff meets that standard here because he sufficiently showed risk of harm to his informational and privacy rights granted via § 1681b(b)(2)(A) and § 1681b(b)(3)(A). See supra pp. 10-13. Second, Braitberg deals with the CCPA, not the FCRA. The court grounds its conclusion regarding the substantive rights the FCRA confers in the statute's backdrop and text, so Braitberg's holding does not directly apply to this case. And third, Braitberg involves the retention of information lawfully obtained. The core of this case is plaintiff's information was obtained in violation of informational and privacy rights granted by the FCRA. The

15

retention of information in <u>Braitberg</u> was an extension of the status quo, and the acquisition of information in this case was a disruption of a status quo where plaintiff's FCRA protections were intact.

Because plaintiffs allege a concrete injury under the FCRA, the court finds they have Article III standing.

## II.    Rule 12(b)(6) motion to dismiss

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Two "working principles" underlie Rule 12(b)(6) analysis. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint. <u>See</u> <u>id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555) (internal quotation marks omitted). The court does, however, "take the plaintiff's factual allegations as true." <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009). Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 678 (citation omitted). The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." <u>Braden</u>, 588 F.3d at 594.

"A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred."

16

Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) (citing Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008)).

Defendant's brief in support of its motion has a chart setting out the dates of the termination for each plaintiff's employment.   (Docket 12 at p. 8).   The court finds it helpful to use the following chart:

| Chart of Dates | | |
|---|---|---|
| Plaintiff | Termination date | Duration between termination and complaint[5] |
| Stephanie Anderson | February 6, 2012. (Docket 6 at p. 3). | 4 years and 11 months |
| Phetsamone "Mao" Dary | February 7, 2012. (Docket 6 at p. 6). | 4 years and 11 months |
| Moriah Demers | October 16, 2012. (Docket 6 at p. 16). | 4 years and 3 months |
| Chad Engelby | February 6, 2012. (Docket 6 at p. 22). | 4 years and 11 months |
| Thomas English | Not later than 2012. (Docket 6 at p. 23). | 4 years and 2 months |
| Deanna Hobbs | May 23, 2012. (Docket 6 at p. 25). | 4 years and 8 months |
| Ken Johnson | 2011. (Docket 6 at pp. 29-30). | 5 years and 2 months |
| Brian Kruschke | 2011. (Docket 6 at pp. 32-33). | 5 years and 2 months |
| Jeffrey Dallman | May 23, 2012. (Docket 6 at p. 12). | 4 years and 8 months |
| Kathryn Eastman | March 2012. (Docket 6 at p. 36). | 4 years and 10 months |
| Alan Hayden | May 8, 2012. (Docket 6 at pp. 39-40). | 4 years and 8 months |

Id.

---

[5]This reference to a "complaint" relates to the plaintiffs' initial complaint filed on February 2, 2017.   (Docket 1).

### a. FCRA claims

The FCRA statute of limitations is set forth at 15 U.S.C. § 1681p and provides:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
>
> > (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
> >
> > (2) 5 years after the date on which the violation that is the basis for such liability occurs.

"Traditionally, in federal-question cases, [the United States Court of Appeals for the Eighth Circuit has] applied the discovery rule as the default statute-of-limitations rule in the absence of a contrary directive from Congress." McDonough v. Anoka Cty., 799 F.3d 931, 940 (8th Cir. 2015).   "[T]he general approach under the discovery rule [is] that a limitations period begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation."   Mack v. Equable Ascent Fin., L.L.C., 748 F.3d 663, 665-66 (5th Cir. 2014) (per curium) (applying the discovery rule to the FCRA) (citing Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 644-48 (2010)); see also Rocheleau v. Elder Living Const., LLC, 814 F.3d 398, 401 (6th Cir. 2016) (applying Mack and the discovery rule to the FCRA).

18

Plaintiffs' FCRA claim spotlights two specific violations of the statute: 15 U.S.C. §§ 1681b(b)(2) & (3).   (Docket 6 at pp. 46-48).   The court quoted these sections earlier in discussing standing and will restate them here in analyzing the statute of limitations.   Section 1681b(b)(2) sets standards an employer must follow in obtaining authorization to procure a consumer report:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Section 1681b(b)(3) places responsibilities on employers when taking adverse employment action based on a consumer report:

> In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

"In the context of § 1681b(b)(2)(A) background report issues, courts have held that 'a plaintiff discovers the facts giving rise to her claim when she learns that the defendant actually procured the background report after she signed the allegedly deficient disclosure form.'" Wirt v. Bon-Ton Stores, Inc., 134 F. Supp. 3d 852, 858 (M.D. Pa. 2015) (quoting Moore v. Rite Aid Headquarters Corp., No. 13-1515, 2015 WL 3444227, at *8 (E.D. Pa. May 29, 2015)).   An employer

violates § 1681b(b)(3) by taking adverse employment action based on a consumer report without providing a copy of the report and a written description of the employee's rights.   Consequently, a plaintiff "discovers [the] facts [that] constitute a legal violation" of § 1681b(b)(3) when she becomes aware a defendant relied on her consumer report to fire her without giving her the report or a written description of her rights.   Mack, 748 F.3d at 665-66.

Defendant argues the face of plaintiffs' complaint shows their FCRA claim is barred by the statute of limitations.   (Docket 12 at pp. 8-11).   Defendant asserts "all FCRA claims became foreclosed—at the latest—two years from the date Wells Fargo notified each Plaintiff that his or her employment was being terminated."   Id. at p. 11.

Plaintiffs allege their FCRA claim is timely.   (Docket 16 at pp. 3-4).   They contend "[t]here is no possible way for a lay person to have discovered the FCRA violations committed by Wells Fargo at the time of the terminations . . . ."   Id. at p. 4.   Plaintiffs assert "[m]any [of them] were not even informed that a conviction rendered them ineligible [for employment], and many of the Plaintiffs did not have a disqualifying conviction on their criminal records."   Id.

### i.  § 1681b(b)(2)

With respect each plaintiff's § 1681b(b)(2) allegation, the statute of limitations begins to run when each plaintiff learned defendant obtained his or

her consumer report.[6]   See Wirt, 134 F. Supp. 3d at 858.   The court examines each plaintiff's claim on this issue.

### 1.   Stephanie Anderson

The complaint's factual allegations for Ms. Anderson state:

> On February 6, 2012, she was informed in person that she was being fired on the spot, and that a criminal background check, pursuant to the SAFE Act, connected her to an alleged crime. . . . On February 13, 2012, Wells Fargo sent a written notification to Anderson through the U.S. Mail, stating "Wells Fargo regrets to inform you that based on their hiring criteria, they are unable to consider you for further employment opportunity with its organization."

(Docket 6 at p. 3).   These statements make clear Ms. Anderson learned defendant procured her background information no later than the date of her termination, February 6, 2012.   Id.   Because she filed her FCRA claim on February 2, 2017,[7] more than two years after she was fired, her claim is time-barred.   15 U.S.C. § 1681p.

### 2.   Phetsamone "Mao" Dary

The complaint includes the following allegations regarding Mr. Dary:

> Wells Fargo employees assured him at the initial hiring interview that the prior criminal charge was not a problem, and that it would not affect his employment. . . .   Dary had 10 productive and successful years of employment, prior to being fired and escorted out the door for the same minor offense that he told Wells Fargo about 10 years earlier. . . .   Dary was terminated on February 7, 2012. . . .   In an effort to rectify the situation and return to

---

[6]Plaintiffs' argument that a lay person would not know of a FCRA violation is unavailing.   (Docket 16 at p. 4).   The issue is when a plaintiff discovered the facts that constitute a FCRA violation, not when a plaintiff becomes aware of a violation of federal law.   See Mack, 748 F.3d at 665-66.

[7]The court uses the date of plaintiffs' initial complaint for statute of limitations purposes.

employment with Wells Fargo, Dary traveled three and a half hours back to his original home county to beg the Clerk of Courts to dig through the archives to get the paperwork showing that there was no conviction and that it had been expunged.

(Docket 6 at p. 6).   These statements indicate Mr. Dary learned defendant procured his background information no later than the date of his termination, February 2, 2012.   Id.   Because he filed his FCRA claim on February 6, 2017, more than two years after he was fired, his claim is time-barred.   15 U.S.C. § 1681p.

### 3.   Jeffrey Dallman

The complaint states Mr. Dallman "was employed for a period of 12 years prior to his termination in May 23, 2012. . . .   Wells Fargo subsequently fired him based upon a conviction that took place 23 years ago."   (Docket 6 at pp. 12-13).   Based on these statements, Mr. Dallman learned defendant procured his background information no later than the date of his termination, May 23, 2012.   Id.   Because he filed his FCRA claim on February 2, 2017, more than two years after he was fired, his claim is time-barred.   15 U.S.C. § 1681p.

### 4.   Moriah Demers

The complaint asserts Ms. Demers "received, on October 16, 2012[,] a termination notice indicating that 'as a result of the background screening, you are ineligible for employment with Wells Fargo and your employment will be terminated October 16, 2012.' "   (Docket 6 at pp. 16-17).   This statement makes clear Ms. Demers learned defendant procured her background

information no later than the date of her termination, October 16, 2012.   Id.

Because she filed her FCRA claim on February 2, 2017, more than two years

after she was fired, her claim is time-barred.   15 U.S.C. § 1681p.

### 5.   Chad Engleby

The complaint's factual allegations for Mr. Engleby advise:

> Defendant deceived Plaintiff by informing him that the background
> check by First Advantage revealed a criminal conviction which
> prohibited his employment. . . .   On February 6, 2012, Wells Fargo,
> through the mail, informed Engleby that he was terminated because
> he was "ineligible for employment with Wells Fargo." Such
> representation was willfully and intentionally done by Wells Fargo
> knowing full well that the Plaintiff was eligible to continue with Wells
> Fargo.

(Docket 6 at pp. 21-22).   These statements establish Mr. Engleby learned

defendant procured his background information no later than the date of his

termination, February 6, 2012.   Id.   Because he filed his FCRA claim on

February 2, 2017, more than two years after he was fired, his claim is

time-barred.   15 U.S.C. § 1681p.

### 6.   Thomas English

The complaint states Mr. English "was a highly successful employee when

he was abruptly fired over a criminal conviction that occurred 15 to 17 years

prior (1995) for which he received an expungment."   (Docket 6 at p. 23).   The

complaint does not clearly state Mr. English's termination date, but this

statement indicates it occurred no later than 17 years following his 1995

conviction, which is 2012.   Id.   Consequently, Mr. English learned defendant

procured his background information no later than 2012, and because he filed his FCRA claim on February 2, 2017, more than two years after 2012, his claim is time-barred.   15 U.S.C. § 1681p.

### 7.  Deanna Hobbs

The complaint asserts on "May 23, 2012, Wells Fargo informed Hobbs that as a result of a background screening '[she was] ineligible for employment with Wells Fargo and [her] employment [was] terminated 05-23-2012.'"   (Docket 6 at p. 26).   This statement establishes Ms. Hobbs learned defendant procured her background information no later than the date of her termination, May 23, 2012. Id.   Because she filed her FCRA claim on February 2, 2017, more than two years after she was fired, her claim is time-barred.   15 U.S.C. § 1681p.

### 8.  Ken Johnson

The complaint states defendant had a security screening of Mr. Johnson's background completed in 2011, and defendant "used Johnson's 1979 arrest as the sole basis for his termination.   Wells Fargo claimed that Johnson was not eligible for hire pursuant to Section 19 of the Federal Deposit Insurance Act." (Docket 6 at p. 29).   Mr. Johnson does not clearly allege when he was fired, but his statements regarding attempts to get his job back in 2011 indicate his employment ended in that year.   Id.   Consequently, Mr. Johnson learned defendant procured his background information no later than 2011, and because he filed his FCRA claim on February 2, 2017, more than two years after he was fired, his claim is time-barred.   15 U.S.C. § 1681p.

24

### 9.  Brian Kruschke

The complaint includes the following factual allegations for Mr. Kruschke:

> In 2011, as Branch Manager of [a] Wells Fargo location, he started hearing about Wells Fargo's new background screening plan, allegedly involving the SAFE Mortgage Act.  Kruschke had no reason to be concerned and had all of the employees screened. At the time of this screening, Kruschke was making about $80,000 a year.  He had applied for and expected to become the Branch Manager of the Level V, Minneapolis Wells Fargo.  The new position would have ranged from $120,000.00 a year to $150,000.00 a year. . . .  Kruschke was informed that he could not come back to work. Wells Fargo claimed that this was because of the SAFE Act and FIRREA.

(Docket 6 at pp. 32-33).   Similar to Mr. Johnson, Mr. Kruschke does not assert when defendant fired him, but the quotation above indicates it occurred no later than 2011.   Id.   Mr. Kruschke learned defendant procured his background information no later than 2011, and because he filed his FCRA claim on February 2, 2017, more than two years after he was fired, his claim is time-barred.   15 U.S.C. § 1681p.

### 10.  Kathryn Eastman

The complaint asserts Ms. Eastman "was fired by Wells Fargo in March of 2012 under the auspices of the SAFE Act and FIRREA. . . .   Wells Fargo claimed that she was no longer eligible to be employed because of a conviction for theft of a hairbrush, thirty one years prior to termination"   (Docket 6 at p. 36).   This means Ms. Eastman learned defendant procured her background information no later than March 2012.   Id.   Because she filed her FCRA claim on February 2,

25

2017, more than two years after she was fired, her claim is time-barred.
15 U.S.C. § 1681p.

### 11.  Alan Hayden

The complaint states "[w]ithin two months of [Mr. Hayden's] most recent promotion, he was fired because of his misdemeanor conviction that he specifically brought to Wells Fargo's attention prior to the original hiring. . . . Hayden was terminated on May 8, 2012."  (Docket 6 at p. 40).  Mr. Hayden learned defendant procured his background information no later than May 8, 2012, when defendant terminated his employment.  Id.  Because he filed his FCRA claim on February 2, 2017, more than two years after he was fired, his claim is time-barred.   15 U.S.C. § 1681p.

Based on the discussion above, the court finds the FCRA's statute of limitations bars each plaintiff's FCRA claim alleging a violation of § 1681b(b)(2).

### ii.  § 1681b(b)(3)

As noted earlier, a plaintiff "discovers [the] facts [that] constitute a legal violation" of § 1681b(b)(3) when she becomes aware a defendant relied on her consumer report to fire her without giving her the report or a written description of her rights.  Mack, 748 F.3d at 665-66.  The latest possible date for each plaintiff to discover the facts underlying a § 1681b(b)(3) violation is the plaintiff's termination date.   That is the point when a plaintiff learns defendant took adverse employment action without providing a copy of the consumer report or a written explanation of rights.   The discussion above demonstrates each

plaintiff's employment ended outside the FCRA's statute of limitations.    <u>See</u> <u>supra</u> Chart of Dates at p. 17 & Section II.a.i.1-11 at pp. 20-25.    Consequently, the court finds plaintiffs' FCRA claims based on violations of § 1681b(b)(3) are time-barred.    15 U.S.C. § 1681p.

### b.  RICO claims

"Civil RICO actions are governed by a four-year statute of limitations." <u>Ass'n of Commonwealth Claimants v. Moylan</u>, 71 F.3d 1398, 1402 (8th Cir. 1995) (citing <u>Agency Holding Corp. v. Malley-Duff & Assocs.</u>, 483 U.S. 143, 156 (1987); <u>see</u> <u>Waldner v. N. Am. Truck & Trailer, Inc.</u>, 277 F.R.D. 401, 406 (D.S.D. 2011) ("While the civil RICO statute does not contain a statute of limitations, the Supreme Court has reasoned that civil RICO actions are subject to a four-year statute of limitations.").

"Federal courts . . . generally apply a discovery accrual rule when a statute is silent on the issue, as civil RICO is here."    <u>Rotella v. Wood</u>, 528 U.S. 549, 555 (2000).    In <u>Waldner</u>, the United States District Court for the District of South Dakota held the "injury discovery rule" applies to the statute of limitations for civil RICO actions.    <u>Waldner</u>, 277 F.R.D. at 407.    "The injury discovery rule has two components."    <u>Id.</u>    "First, the civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'"    <u>Id.</u> (quoting <u>Grimmett v. Brown</u>, 75 F.3d 506, 510 (9th Cir. 1996)).    A plaintiff's "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."    <u>Rotella</u>, 528 U.S. at 555.    The discovery is sufficient if, from the plaintiff's subjective perspective, she "actually knew of her injury," or

27

"using a reasonable person standard, whether she should have known."
Waldner, 277 F.R.D. at 407 (quoting Bendzak v. Midland Nat. Life Ins. Co., 440
F. Supp. 2d 970, 979 (S.D. Iowa 2006)) (internal quotation marks omitted).

"The second part of the 'injury discovery' rule is the 'separate accrual rule,'
which provides that a new cause of action accrues for each new and independent
injury, even if the RICO violation causing the injury happened more than four
years before." Id. (quoting Grimmett, 75 F.3d at 510). "But 'non-independent
injuries will not cause a new limitations period to accrue.'" Id. (quoting
Misischia v. St. John's Mercy Health Sys., No. 04-CV-1161, 2005 WL 1875035,
at *7 (E.D. Mo. Aug. 5, 2005)) (internal quotation marks omitted). "A new
predicate act does not necessarily create a new injury for the 'separate accrual
rule.'" Id. (quoting Misischia, 2005 WL 1875035, at *7).

### i. Injury

The court must determine the injury underlying each plaintiff's RICO
claim because that is the moment when the statute of limitations clock started.
As stated earlier, the core of plaintiffs' RICO claim[8] is that defendant fired them
for the "purpose of terminating employees en masse, reducing payroll,
eliminating earned and accrued employee bonuses and benefits, and depressing
the relevant job market, all under the fraudulent pretext of compliance with
federal regulation." (Docket 6 at p. 61). According to plaintiffs, defendant's

---

[8]Use of "RICO claim" in this section primarily refers to count 30 of the
complaint, the substantive RICO claim. (Docket 6 at pp. 49-67). The court
separately addresses count 31, plaintiffs' RICO conspiracy claim. Id. at
pp. 67-68; see infra Section II.b.iii.

scheme involved collaborating with its "agents and subcontractors" in order to "induce Plaintiff[s] and other employees who fully disclosed convictions to accept employment with Wells Fargo," only to fire plaintiffs "behind a façade of compliance with federal [law,]" and then deliberately concealed its conduct with misrepresentations.   Id. at pp. 63-64.

Under this RICO claim, the injury each plaintiff suffered was being fired based on defendant's understanding of the plaintiff's criminal background information.   It is clear from the complaint that plaintiffs ground their RICO cause of action in the termination of their jobs.   Id. at pp. 49-56, 61-64; see also supra Section II.a.i.1-11 (detailing the complaint's allegations surrounding each plaintiff's termination).[9]   As the complaint states, defendant made each plaintiff directly aware of his or her termination, and that the termination was based on the plaintiff's criminal background information and defendant's alleged responsibilities under federal law.   (Docket 6 at pp. 49-50); see supra Section II.a.i.1-11.   This is the root of plaintiffs' RICO claim and shows their injuries occurred when they were fired.   Each plaintiff "actually knew of [his or] her injury" on the date of termination.   Waldner, 277 F.R.D. at 407.   Because it is a plaintiff's "discovery of the injury, not discovery of the other elements of a claim [that] starts the clock[,]" the statute of limitations began to run for each plaintiff when he or she learned defendant fired him or her.   Rotella, 528 U.S. at 555.

---

[9]Although this citation relates to plaintiffs' FCRA claim, the complaint's allegations connecting the firing of each plaintiff with defendant's use of the employee's background information is applicable to the RICO injury analysis.

Even if the plaintiffs lacked actual knowledge of their injuries, they "should have known" based on "a reasonable person standard . . . ."  Waldner, 277 F.R.D. at 407.   In a securities fraud case, the Eighth Circuit held notice under a comparable standard can occur when "storm warnings . . . would alert a reasonable person of the possibility of misleading information, relayed either by an act or omission."   Great Rivers Co-op. of Southeastern Iowa v. Farmland Indus., Inc., 120 F.3d 893, 896 (8th Cir. 1997).   The United States District Court for the Southern District of Iowa applied the Great Rivers "storm warnings" reasoning to a civil RICO action and the reasonable person standard for discovering an injury.   Bendzak, 440 F. Supp. 2d at 980-81.   Once plaintiffs were fired and provided the explanation that defendant was complying with federal law, they "should have known of [their] injur[ies,]" id., because they had sufficient "storm warnings."   Great Rivers, 120 F.3d at 896.   Reasonably diligent people in plaintiffs' situations would have taken some sort of steps—contacting a lawyer or promptly researching defendant's alleged federal obligations—once they were fired and received defendant's explanation.   As Bendzak highlighted, this finding is consistent with the United States Court of Appeals for the Third Circuit's observation that "the general purpose of civil RICO [is] to encourage plaintiffs to actively investigate potential criminal activity, to become 'prosecutors, private attorneys general, dedicated to eliminating racketeering activity.' "   Mathews v. Kidder, Peabody & Co., Inc., 260 F.3d 239, 252 (3d Cir. 2001) (quoting Rotella, 528 U.S. at 557).

### ii.  Separate accrual and equitable tolling

Plaintiffs argue their complaint states new and independent injuries providing them with "a new cause of action" even though "the RICO violation causing the injury happened more than four years before."   Waldner, 277 F.R.D. at 407.   Plaintiffs allege "the racketeering charges in the [complaint] contain numerous allegations that the predicate activity continued . . . at least well into 2013."  (Docket 16 at p.15).   Plaintiffs further contend defendant's refusal to rehire Ms. Anderson and Mr. Dallman and its rehiring of Mr. Dary "without his seniority, tenure and employment benefits accumulated" constitute independent injuries for the purposes of the separate accrual rule.   Id. at pp. 15-16.

Neither of plaintiffs' arguments show the separate accrual rule applies. "A new predicate act does not necessarily create a new injury for the 'separate accrual rule.' "  Waldner, 277 F.R.D. at 407 (quoting Misischia, 2005 WL 1875035, at *7).   Under Waldner, plaintiffs' bare statement that predicate acts underlying the RICO claim extended into 2013 does not sufficiently show an independent injury.   See id.   Further, the Plaintiffs' assertions regarding defendant not rehiring Ms. Anderson and Mr. Dallman and eliminating Mr. Dary's seniority and past benefits advance the sort of "non-independent injuries [that] will not cause a new limitations period to accrue."   Id. (citing (quoting Misischia, 2005 WL 1875035, at *7) (internal quotation marks omitted).   The assertions tie back to the original injuries—the termination of Ms. Anderson, Mr. Dallman and Mr. Dary's employment—and fail to set forth a new injury.   See id.

Plaintiffs contend the statute of limitations should be tolled.   In Rotella the Supreme Court reaffirmed "the understanding that federal statutes of limitations are generally subject to equitable principles of tolling, and where a pattern remains obscure in the face of plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty . . . ."   Rotella, 528 U.S. at 560 (internal citation omitted).   To show they diligently sought to identify defendant's fraud, plaintiffs state they "have exercised reasonable diligence in being able to bring this lawsuit and thus under Supreme Court standards, the statute should be tolled for Plaintiffs."   (Docket 16 at p. 17).   Stating they exhibited diligence does not explain what actions plaintiffs took that the court should consider to be diligent investigation.   Even if defendant's "pattern remain[ed] obscure" to plaintiffs, the court finds they have not demonstrated "diligence in seeking to identify it . . . ."   Rotella, 528 U.S. at 561.   "While barring the action at this early stage based on the statute of limitations produces a harsh result, the Supreme Court has made it clear that district courts should not toll the statute of limitations in a civil RICO action where a plaintiff has not exercised diligence in the discovery of her injury."   Bendzak, 440 F. Supp. 2d at 983.

Because plaintiffs discovered their injuries underlying the RICO claim beyond the four-year statute of limitations, the court finds they are time-barred. See Waldner, 277 F.R.D. at 407; supra II.a.i.1-11 at pp. 20-25; Chart of Dates at p. 17.

### iii.  RICO conspiracy

Plaintiffs also collectively allege defendant violated federal law by conspiring to violate RICO.   (Docket 6 at pp. 67-68).   It is unlawful for any person to conspire to violate a section of RICO.   18 U.S.C. § 1962(d).   "Like the statute of limitations under the other civil RICO provisions, the statute of limitations for civil RICO conspiracy claims is four years."   <u>Bendzak</u>, 440 F. Supp. 2d at 983 (citing <u>Hodas v. Sherburne, Powers & Needham, P.C.</u>, 938 F. Supp. 60, 65 (D. Mass. 1996)).   "Moreover, the analysis for civil RICO conspiracy claims is the same as that for civil RICO claims brought under 18 U.S.C. § 1962(c)."   <u>Id.</u>   Because the court finds plaintiffs' RICO claim time-barred, plaintiffs' RICO conspiracy claim is also not timely.   <u>See id.</u> ("For the reasons discussed above, Bendzak's civil RICO conspiracy claim, if there is one, is time-barred . . . .").

### c.  Mr. English and Mr. Dallman's state law claims

Defendant argues Mr. English and Mr. Dallman's state law claims for fraud and deceit should be dismissed as time-barred.   (Docket 12 at pp. 12-14). In discussing what statute of limitations to apply to these plaintiffs' fraud claims, defendant asserts the court must resolve a conflict of laws issue.   <u>Id.</u> at pp. 13-14.   Defendant contends the conflict of laws inquiry leads to the court applying statutes of limitations from states other than South Dakota.   <u>Id.</u>

"A federal court exercising diversity jurisdiction is required to apply the law of the forum when ruling on statutes of limitations."   <u>Pinnacle Pizza Co., Inc.</u>

v. Little Caesar Enters., Inc., 598 F.3d 970, 975 (8th Cir. 2010); Zutz v. Case Corp., 422 F.3d 764, 774 (8th Cir. 2005) ("Federal courts sitting in diversity apply the forum state's statute of limitations.").   As noted earlier, the court has diversity jurisdiction over plaintiffs' state law claims.   See supra Background at pp. 1-2.   Despite defendant's argument on conflicting laws, the court is required to apply the law of the forum, South Dakota, on the statute of limitations issue. See Pinnacle Pizza, 598 F.3d at 975 ("The forum state in this case[ is] South Dakota, . . . [t]herefore we must apply the South Dakota statute of limitations in resolving this case.").

The six-year statute of limitations in SDCL § 15-2-13(6) applies to Mr. English and Mr. Dallman's fraud and deceit claims.   See Masloskie v. Century 21 Am. Real Estate, Inc., 818 N.W.2d 798, 803 (S.D. 2012) (apply SDCL § 15-2-13(6) to a fraud and deceit cause of action).   Each plaintiff's state law claim accrued on the date of his termination.   Mr. Dallman's employment with defendant ended May 23, 2012, and the court determined defendant fired Mr. English at a time not later than 2012.   See supra Chart of Dates at p. 17 & Section II.a.i.3 & 6 at pp. 21-23.   Plaintiffs filed their original complaint on February 2, 2017, so plaintiffs' claims needed to accrue no later than February 2, 2011.   Mr. Dallman's claim clearly accrued after February 2, 2011, and the complaint does not establish Mr. English's claim accrued before February 2, 2011.   The court finds these plaintiffs' state law claims for fraud and deceit are not time-barred.

34

### III.   Rule 12(f) motion to strike

In the alternative to its motion to dismiss, defendant argues the court should strike plaintiffs' complaint under Federal Rule of Civil Procedure 12(f). (Docket 12 at pp. 23-25).   Defendant asserts plaintiffs' complaint "is directly contrary to Rule 8's purpose of promoting simplicity and brevity to clearly present the issues involved in the litigation." Id. at p. 24.   Defendant contends it "will be faced with the difficult, if not impossible, task of responding to each of the factual assertions" in the complaint unless the court strikes the pleading. Id.

Under Rule 12(f), "courts may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).   "Despite this broad discretion . . . striking a party's pleadings is an extreme measure, and, as a result, . . . [m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotation marks omitted).   "[E]ven matters that are not 'strictly relevant' to the principal claim at issue should not necessarily be stricken, if they provide 'important context and background' to claims asserted or are relevant to some object of the pleader's suit." FDIC v. Dosland, 298 F.R.D. 388, 393 (N.D. Iowa 2013) (quoting Stanbury, 221 F.3d at 1063).

Because the court grants defendant's Rule 12(b)(6) motion to dismiss as to plaintiffs' FCRA and RICO claims, most of defendant's purpose in its Rule 12(f) motion to strike is satisfied.   Upon review of the plaintiffs' remaining causes of action, the court finds the "extreme measure" of striking plaintiffs' pleading is not proper.   See Stanbury, 221 F.3d at 1063.   Plaintiffs' complaint provides "important context and background" to the claims it advances against defendant.   See id.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion to dismiss (Docket 11) is granted in part and denied in part.   Counts 29, 30 and 31—plaintiffs' FCRA and RICO claims—are dismissed without prejudice.   Mr. Dallman and Mr. English's state law claims—counts 9, 10, 15 and 16—are not dismissed.   Defendant's motion to strike is denied.

Dated July 17, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE