UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| STEPHANIE ANDERSON, PHETSAMONE "MAO" DARY, MORIAH DEMERS, CHAD ENGELBY, THOMAS ENGLISH, DEANNA HOBBS, KEN JOHNSON, BRIAN KRUSCHKE, JEFFREY DALLMAN and JADE SAND,<br><br>            Plaintiffs,<br><br>    vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>            Defendant. | CIV. 17-5010-JLV<br><br><br>ORDER |

## INTRODUCTION

Plaintiffs brought this civil action against defendant Wells Fargo Bank, N.A. ("Wells Fargo") invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[1]  (Docket 29).   Wells Fargo fired each plaintiff in 2011 or 2012, claiming federal law and their criminal histories required their termination. Plaintiffs allege the terminations constitute fraud, deceit, promissory estoppel, fraudulent inducement and fraudulent concealment under state law.   Most of them seek punitive damages.

---

[1]Plaintiffs are all non-South Dakotans while Wells Fargo is a corporate citizen of South Dakota.   (Docket 29 at ¶¶ 1-2).   The amount in controversy is alleged to be more than $75,000.   Id. at ¶ 3.

Five defense motions are now pending before the court. (Dockets 45, 57, 68, 76 & 80). Three concern discovery disputes, one seeks to exclude a plaintiffs' expert, and the last is a motion for summary judgment. For the reasons given below, the court grants summary judgment to Wells Fargo and denies the other pending motions as moot.[2]

## I.    Facts

The following recitation consists of the material facts developed from Wells Fargo's statement of undisputed material facts (Docket 82), plaintiffs' response to those facts (Docket 91), Wells Fargo's reply (Docket 94) and other evidence in the record where indicated. These facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted).

At the outset, the court notes two problems with plaintiffs' response to Wells Fargo's statement of undisputed material facts. First, plaintiffs often failed to properly controvert Wells Fargo's facts. See, e.g., Docket 91 at ¶¶ 14, 24 (denying fact but failing to put forth evidence controverting the fact). "A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). Second, plaintiffs repeatedly objected to Wells Fargo's facts as irrelevant, but failed to explain why they were irrelevant. See, e.g., Docket 91 at

---

[2]Wells Fargo requested oral argument on its summary judgment motion and some of its other pending motions. The court finds oral argument is unnecessary.

¶¶ 23, 42.   A bare relevance objection with no explanation is insufficient to controvert a properly supported fact.   The court generally concludes facts subject to improper objections are undisputed.   Fed. R. Civ. P. 56(e)(2).

Wells Fargo is a nationally-chartered bank insured by the Federal Deposit Insurance Corporation ("FDIC").   (Docket 94 at ¶ 1).   A federal statute, commonly referred to as Section 19, requires Wells Fargo to investigate an individual's criminal history before hiring them.   Id. at ¶ 5; see also 12 U.S.C. § 1829.   Wells Fargo may not hire individuals convicted of certain offenses without FDIC consent.   12 U.S.C. § 1829(a)(1).   Individuals with disqualifying convictions may apply for FDIC consent, received through a Section 19 waiver, to work at Wells Fargo or other regulated banks.   (Docket 94 at ¶ 6).

Wells Fargo hired each of the ten plaintiffs in 2010 or earlier.   Id. at ¶¶ 41, 66, 93, 117, 140, 160, 184, 208, 230 & 254.   Wells Fargo performed a "name-based criminal background screening[]" on applicants until March of 2010.   Id. at ¶ 18.   Most of the plaintiffs' name-based background checks showed no criminal convictions.[3]   Id. at ¶¶ 40, 92, 116, 159, 183, 207, 228, 253. A name-based background check is "less robust" and would not show "many older or non-public conviction records[.]"   Id. at ¶ 21.

_____

[3]No party produced evidence showing whether plaintiff Jeffrey Dallman's name-based background check revealed any criminal convictions.   Plaintiff Brian Kruschke's initial check showed a 2000 guilty plea for misdemeanor Minnesota assault.   (Dockets 94 at ¶ 139 & 83-64 at p. 8).   Plaintiffs Mao Dary and Moriah Demers stated on their applications that they had criminal history, but their initial checks did not show any convictions.   (Docket 94 at ¶¶ 88, 90 & 250).

In 2011 and 2012, Wells Fargo decided to rescreen many employees using a Federal Bureau of Investigation ("FBI") "comprehensive and inclusive . . . fingerprint-based search[.]"   Id. at ¶ 24.   Wells Fargo's merger with Wachovia, which screened potential employees using a fingerprint-based search, and a newly-passed federal law requiring fingerprint-based searches for some employees were factors in its decision to rescreen employees.   Id. at ¶¶ 14-17. The FBI database was more comprehensive and sophisticated.   Id. at ¶ 21. Each plaintiff consented to and participated in the rescreen.   Id. at ¶¶ 51-53, 74-76, 100-02, 124-26, 146, 166-67, 194-96, 214-17, 236-38 & 262-64.   The rescreens showed each plaintiff had a criminal history, summarized in the chart below.

| Figure 1: Plaintiffs' Criminal Histories | | | |
|---|---|---|---|
| **Plaintiff** | **Charge** | **Year** | **Disposition** |
| Stephanie Anderson | Theft – Minn. Stat. § 609.52 | 1999 | Pretrial diversion; sentenced to 3 years probation; probation continued 2 years; charge dismissed in 2005. |
| Jeffrey Dallman | Theft – Iowa Code § 714.2 | 1990 | Conviction; sentenced to 5 years prison, suspended, and 2 years probation. |
| Mao Dary | 3rd Degree Burglary – Iowa Code § 713.6A | 2000 | Deferred judgment, 2 years probation. |
| Deanna Hobbs | Theft – Mo. Rev. Stat. § 570.030 | 2004 | Conviction, suspended imposition of sentence; 6 months probation; charge dismissed in 2005. |
| Brian Kruschke | Theft – Minn. Stat. § 609.52 | 1995 | Conviction; sentenced to 10 days jail and 6 months probation. |

| | | | |
|---|---|---|---|
| Chad Engelby | Theft of Motor Vehicle – Minn. Stat. § 609.52 | 1994 | Pretrial diversion; 1 year program; charge dismissed in 1995. |
| Thomas English | Theft – Mont. Code Ann. § 45-6-301 | 1995 | Deferred judgment, 3 years; charge dismissed in 1999. |
| Ken Johnson | Theft – Minn. Stat. § 609.52 | 1979 | Conviction; sentenced to 5 years probation, imposition of sentence stayed. |
| Jade Sand | Theft – Ariz. Rev. Stat. § 13-1802 | 1989 | Conviction; sentenced to 2 years probation; felony reduced to misdemeanor in 1991; judgment of guilt vacated and charges dismissed in 1998. |
| Moriah Demers | Theft of Motor Vehicle – Minn. Stat. § 609.52 | 1999 | Conviction; sentenced to 365 days with 335 days suspended and 2 years probation. |

See Dockets 47-1 at pp. 1-2, 83-20 at p. 6, 83-32 at pp. 1-2. 83-44 at p. 3, 83-58 at p. 3, 83-70 at p. 3, 84-11 at p. 3; 84-25 at p. 5, 84-40 at p. 3, 84-50 at p. 2 & 84-63 at pp. 1-2; see also Docket 94 at ¶¶ 54, 77, 103, 127, 147, 168, 197, 218, 239 & 265.

Wells Fargo fired each of the plaintiffs after receiving the results of the rescreens. (Docket 94 at ¶¶ 59, 84, 107, 133, 151, 172, 200, 222, 243 & 270). Wells Fargo concluded Section 19 forbade it from continuing to employ plaintiffs. Id. At the time of their terminations, no plaintiff had a Section 19 waiver from the FDIC.[4] Id. at ¶¶ 58, 81-83, 108, 131, 153, 176, 201, 223, 245 & 272.

---

[4]Some of the plaintiffs received Section 19 waivers after their terminations. (Docket 94 at ¶¶ 83, 110). Mr. Dary, Ms. Demers and plaintiff Jade Sand were rehired by Wells Fargo after obtaining waivers. Id. at ¶¶ 111, 248 & 274. Mr. Dary and Ms. Demers remain employed with Wells Fargo. Id. at ¶¶ 111 & 274. Plaintiff Chad Engelby stated he did not recall if he applied for a Section 19 waiver. Id. at ¶ 176.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).   Only disputes over facts which might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248.   "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.   Id.   However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587-88. The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## III. Analysis

Wells Fargo raises two threshold arguments in favor of summary judgment. First, it argues two recent decisions by the United States Court of Appeals for the Eighth Circuit "command" summary judgment. (Docket 81 at pp. 11-13) (citing Williams et al. v. Wells Fargo Bank, N.A., 901 F.3d 1036 (8th Cir. 2018); Eggers v. Wells Fargo Bank, N.A., 899 F.3d 629 (8th Cir. 2018)). Second, it contends federal law preempts any attempt by plaintiffs to impose state law liability for the terminations, which it asserts were required by Section 19. Id. at pp. 13-17. Plaintiffs resist both arguments, arguing Williams and Eggers are distinguishable and Section 19 did not require the terminations. (Docket 90 at pp. 8-16).

The court finds Williams and Eggers persuasive but not controlling authority in the circumstances of this case. However, the court agrees with Wells Fargo that Section 19 required it to terminate plaintiffs' employment and

concludes Section 19 preempts plaintiffs' state law claims.   The court then finds each plaintiff was ineligible for banking employment under Section 19 and holds Wells Fargo was complying with federal law in terminating them.   Because plaintiffs cannot maintain their chosen causes of action in the face of contrary federal law, the court need not reach the parties' arguments about the merits of plaintiffs' claims.

### A.    Williams & Eggers

The Eighth Circuit recently rejected two attempts to impose liability on Wells Fargo for Section 19-mandated terminations.   In Eggers, the plaintiff alleged Wells Fargo violated the Age Discrimination in Employment Act "by (1) refusing to sponsor Section 19 waivers and by (2) failing to provide job applicants and employees with pre-screening notice of the opportunity to obtain waivers."   899 F.3d at 632.   The plaintiff's theory was "that these two practices created a disparate impact against older workers."   Id.   The Eighth Circuit did not decide whether Section 19 barred plaintiff's claim, but concluded her claim could not survive because she "failed to present statistical evidence of *any kind* that the two challenged policies created a disparate impact among Wells Fargo employees older than 40."   Id. at 635 (emphasis in original).

In Williams, the plaintiffs alleged "Wells Fargo's policy of summarily terminating or withdrawing offers of employment to any individual with a Section 19 disqualification" constituted race-based employment discrimination.   901 F.3d at 1039.   The Eighth Circuit held "summary employment exclusion

following a Section 19 disqualification is a business necessity" justifying the racially disparate outcomes created by the terminations. Id. at 1040. The court also rejected the plaintiffs' arguments that Wells Fargo could have provided advance notice of the waiver requirement or helped employees obtain waivers in order to "ameliorate[] the disparate impact." Id. at 1041.

In both cases, the Eighth Circuit noted, in dicta, that Section 19 required Wells Fargo to terminate employees with criminal convictions "involving dishonesty or a breach of trust." Eggers, 899 F.3d at 631 (quoting 12 U.S.C. § 1829(a)(1)(A)); see also Williams, 901 F.3d at 1038. Both decisions also rely on the premise that Wells Fargo acted lawfully in terminating Section 19 disqualified employees. Eggers, 899 F.3d at 635 ("[F]ederal law—not company policy—triggers disqualification from employment."); Williams, 901 F.3d at 1041 ("[T]he bank's decision to comply with [Section 19's] command is a business necessity[.]"). And in both cases, the Eighth Circuit declined to endorse the plaintiffs' arguments that Wells Fargo should have aided employees in obtaining waivers. Eggers, 899 F.3d at 635; Williams, 901 F.3d at 1041.

Plaintiffs here are correct that Eggers and Williams do not squarely answer the question presented in this case—whether Section 19 preempts their state law claims. As they note, this is neither a race nor age discrimination case. (Docket 90 at pp. 15-16). But Eggers and Williams make clear the Eighth Circuit recognizes the necessity of terminating Section 19 disqualifying bank employees. This holding fatally undermines plaintiffs' argument that Wells

9

Fargo was not required to terminate their employment.  Id. at p. 16 (arguing

Section 19 did not "*require* that [plaintiffs] be terminated.") (emphasis in

original).

### B.    Preemption

"The Supremacy Clause invalidates state laws that interfere with, or are

contrary to, federal law."  Qwest Corp. v. Minn. Pub. Utils. Comm'n., 684 F.3d

721, 726 (8th Cir. 2012) (citations and quotations omitted).   "Conflict

preemption occurs when compliance with both federal and state laws is

impossible, and when a state law 'stands as an obstacle to the accomplishment

and execution of the full purposes and objectives of Congress.' "[5]   Keller v. City

of Fremont, 719 F.3d 931, 940 (8th Cir. 2013) (quoting Arizona v. United States,

567 U.S. 387, 399 (2012)).   "What is a sufficient obstacle is a matter of

judgment, to be informed by examining the federal statute as a whole and

identifying its purpose and intended effects[.]"   Crosby v. Nat'l. Foreign Trade

Council, 530 U.S. 363, 373 (2000).   "In preemption analysis, courts should

assume that the historic police powers of the States are not superseded unless

that was the clear and manifest purpose of Congress."   Arizona, 567 U.S. at 400

(internal quotations omitted).

---

[5]The parties do not argue the other types of preemption—field preemption and express preemption—apply to this case.   See Murphy v. Nat'l. Collegiate Athletic Ass'n., 138 S. Ct. 1461, 1480-81 (2018) (explaining the three types of preemption).   The court limits its analysis only to conflict preemption.

## 1.     Purpose of Section 19

Determining whether Section 19 preempts the state law claims plaintiffs

bring requires a close examination of the "purpose and intended effects" of the

statute, considered "as a whole[.]"   <u>Crosby</u>, 530 U.S. at 373.   Section 19 states:

> Except with the prior written consent of the [FDIC], any person who
> has been convicted of any criminal offense involving dishonesty or a
> breach of trust or money laundering, or has agreed to enter into a
> pretrial diversion or similar program in connection with a
> prosecution for such offense may not become, or continue as, an
> institution-affiliated party with respect to any insured depository
> institution[.]

12 U.S.C. § 1829(a)(1)(A)(i).   "[T]he statute does not consider the age of the

convictions when applying the employment bar."   <u>Williams</u>, 901 F.3d at 1038

(citation omitted).   A bank employee is an "institution-affiliated party."

12 U.S.C. § 1813(u)(1).   Wells Fargo is an "insured deposition institution."

(Docket 94 at ¶ 1).   "Whoever knowingly violates" Section 19 "shall be fined not

more than $1,000,000 for each day such prohibition is violated or imprisoned for

not more than 5 years or both."   12 U.S.C. § 1829(b).

The FDIC has the authority to interpret Section 19.   12 U.S.C. § 1819(a).

In 1998, the FDIC issued a policy statement governing issuance of Section 19

waivers.   Statement of Policy Pursuant to Section 19 of the Federal Deposit

Insurance Act, 63 Fed. Reg. 66,117 (Dec. 1, 1998) ("1998 SOP").   In its 1998

SOP, the FDIC declared, "[t]he basic underlying premise of section 19 is to

prevent risk to the safety and soundness of an insured institution or the

interests of its depositors, and to prevent impairment of public confidence in the

insured institution." Id. at 66,181. "The purpose of an application [for a Section 19 waiver] is to provide the applicant an opportunity to demonstrate that, notwithstanding the bar, a person is fit to participate in the conduct of the affairs of an insured institution without posing a risk to its safety and soundness or impairing public confidence in that institution." Id. at 66,184.

Section 19's text and the FDIC's interpretations make clear the purpose of the statute is to protect financial institutions—and, by extension, the public, including depositors—from dishonest employees.[6] Congress determined that employees with convictions for crimes of "dishonesty or a breach of trust or money laundering" were presumptively unfit to work at a financial institution until they proved otherwise to the FDIC. 12 U.S.C. § 1829(a)(1)(A). Congress intended for Section 19 disqualified individuals to undergo the waiver process either before they began working at a financial institution or as soon as their disqualification was discovered. Id. at § 1829(a)(1)(A)(i) (stating Section 19 disqualified individuals "may not become, *or continue as*," bank employees) (emphasis added). In general, the intended effect of Section 19 is to prevent disqualified individuals from working at a financial institution without a FDIC waiver.

---

[6]Section 19 also applies to many other persons involved with financial institutions, including directors and controlling stockholders. See 12 U.S.C. § 1813(u) (defining "institution-affiliated party," the category of persons covered by Section 19). While it may be the case Congress was particularly concerned with dishonest bank managers rather than lower-tier employees like plaintiffs in enacting Section 19, the statute explicitly covers all bank employees. Id.

Section 19 clearly indicates Congress' intent to require financial institutions like Wells Fargo to terminate disqualified individuals. Accordingly, applications of state law that impede Wells Fargo from terminating disqualified individuals are preempted by Section 19. The court next turns to whether plaintiffs' state law claims interfere with Wells Fargo's compliance with Section 19.

## 2. Conflict with state law claims

At the outset, the parties disagree on the nature of plaintiffs' state law claims. Plaintiffs did not cite any state statutes or otherwise reference any particular state's common law in their complaint. (Docket 29). Plaintiffs now assert their claims are brought under South Dakota law. (Docket 90 at pp. 16). Wells Fargo disagrees, arguing South Dakota's choice of law rules require applying the law of plaintiffs' home states in evaluating their claims. (Docket 81 at pp. 17-18). The court concludes determining which state's law governs plaintiffs' claims is unnecessary because the relief plaintiffs seek clearly obstructs the will of Congress.

Plaintiffs seek a declaration that Wells Fargo's "conduct was fraudulent" along with detrimental, compensatory, and punitive damages. (Docket 29 at p. 47). In essence, plaintiffs are seeking to punish Wells Fargo for firing them.[7] This sets up a direct conflict with Section 19, which required Wells Fargo to terminate plaintiffs' employment. See infra Section III.C.

---

[7]Plaintiffs assert theirs is not a wrongful termination case. (Docket 90 at p. 15). It is true they are not asserting wrongful termination claims grounded in age or race discrimination, but they are asserting their terminations constituted fraud. Id. Plaintiffs' claims are inseparable from their terminations.

State law is "impliedly pre-empted where it is 'impossible for a private party to comply with both state and federal requirements.' " Mut. Pharm. Co., Inc. v. Bartlett, 570 U.S. 472, 480 (2013) (quoting English v. General Elec. Co., 496 U.S. 72, 79 (1990)). Plaintiffs here assert Wells Fargo should not have fired them when it became clear they were Section 19 ineligible. (Docket 90 at pp. 4-7, 9). But Wells Fargo had no choice except to terminate plaintiffs' employment once it became clear each had Section 19 disqualifying criminal backgrounds. If the court concluded plaintiffs' state law liability claims were not preempted, Wells Fargo would be confronted with an impossible choice: face potential federal liability under Section 19 for employing ineligible individuals or face state law liability for "fraudulently" terminating employees. Section 19 "prohibited [Wells Fargo] from taking the remedial action required to avoid liability under" plaintiffs' theory of the case. Bartlett, 570 U.S. at 486. Wells Fargo could not have complied both with Section 19 and with the state fraud laws, at least as plaintiffs view those laws.

Plaintiffs' attempt to hold Wells Fargo liable for their terminations also "stands as [an] obstacle to the accomplishment and execution of the full purposes and objectives of Congress" expressed in Section 19. Arizona, 567 U.S. at 399 (internal quotation omitted). The "clear and manifest purpose of Congress" was that financial institutions like Wells Fargo terminate Section 19 disqualified employees. Id. at 400 (internal quotation omitted). Plaintiffs seek to punish Wells Fargo for complying with Section 19, setting up an obvious obstacle to the proper functioning of Congress' scheme to protect financial institutions and the banking public. Congress' purpose would be impeded if

14

disqualified employees could hold financial institutions liable under state law for complying with Section 19. Financial institutions could easily become less likely to thoroughly investigate the criminal backgrounds of their employees or terminate disqualified employees in fear of state law liability.

Wells Fargo cannot comply both with Section 19 and with the state law fraud statutes as plaintiffs construe them. Plaintiffs' claims, if pursued to a favorable conclusion, frustrate the purpose of Section 19. For these reasons, the court finds Section 19 preempts plaintiffs' claims.

### 3. Plaintiffs' arguments against preemption

Plaintiffs' arguments against preemption are unavailing. First, they assert Wells Fargo "purposefully ignored" Section 19 because they hired some of the plaintiffs despite knowing of their criminal histories. (Docket 90 at pp. 8-10). In plaintiffs' view, Wells Fargo was required to obtain a Section 19 waiver before hiring them.[8] Id. at pp. 9-10. This argument does not bear on a preemption analysis. Preemption is not an equitable defense that can be overlooked if the asserting party has unclean hands. Wells Fargo would not be estopped from raising a preemption defense in this case even if it had previously failed to comply with Section 19.

---

[8]Plaintiffs' argument that Wells Fargo was required to obtain a waiver for them is misleading. They selectively quote the 1998 SOP to assert a waiver application "must be filed by an insured depository institution." (Docket 90 at p. 9) (citing 1998 SOP, 63 Fed Reg. at 66,177). However, the 1998 SOP also allowed an individual to apply for a waiver upon request. Id. at 66,185. In addition, nothing in the 1998 SOP requires a bank to apply for a Section 19 waiver. It merely states the bank should be the waiver applicant if it desires to employ a disqualified individual. The alternative response when confronted with a Section 19-disqualified individual is termination, which Wells Fargo employed.

Next, plaintiffs argue Section 19 did not require Wells Fargo to terminate their employment. (Docket 90 at pp. 10-12). They assert an internal FDIC manual gave Wells Fargo the option to suspend their employment while seeking a Section 19 waiver instead of terminating them. Id. at p. 12; see also Docket 92-3 at p. 3. Whatever the merits of this internal FDIC document—which is not a binding regulation or official statement of policy—it is squarely contradicted by Section 19's statutory text and Eighth Circuit case law.

Section 19 is not ambiguous. Any disqualified person "may not . . . continue as" a bank employee without a waiver. 12 U.S.C. § 1829(a)(1)(A)(i). The Eighth Circuit recognized as much in Eggers and Williams. 899 F.3d at 631 (Section 19 prohibits disqualified persons from "continuing as an employee" of a covered financial institution); 901 F.3d at 1038 ("No disqualified individual may . . . continue employment" with the financial institution). Section 19 requires Wells Fargo to terminate disqualified individuals when it discovers their disqualification. The statute's penalty provision suggests Congress intended rapid termination—Wells Fargo could have incurred fines up to a million dollars per day of violation. 12 U.S.C. § 1829(b). Wells Fargo did not have an option to suspend plaintiffs' employment to allow them to obtain a waiver. It was required to terminate plaintiffs.

Third, plaintiffs argue that federal preemption "cannot be used as a shield for fraud." (Docket 90 at p. 13) (citing Hughes v. Hughes, No. E2016-00561-COA-R3-CV, 2017 WL 57163 at *5 (Tenn. Ct. App. Jan 5, 2017)). Hughes, an unpublished Tennessee state case concerning a dispute over the

16

beneficiary of a federal employee's life insurance policy, cited case law establishing that federal law governing the proceeds of federal life insurance policies may not preempt contrary state law when beneficiary fraud is evident. 2017 WL 57163 at *5-6 (citing Yiatchos v. Yiatchos, 376 U.S. 306, 307-09 (1964); Metropolitan Life Ins. Co. v. McMorris, 786 F.3d 379, 380-81 (10th Cir. 1986)). These cases do not govern the present dispute, where plaintiffs allege Wells Fargo engaged in fraudulent behavior by complying with Section 19. Plaintiffs do not cite any authority for a more general fraud exception to preemption law and the court is aware of none.

Finally, plaintiffs contend there is no preemption here because there is no "apparent conflict between state and federal legislation." (Docket 90 at p. 14). Plaintiffs state Wells Fargo "fails to identify any state statute which is even arguably preempted." Id. "But the distinction between common law and statutory law is irrelevant" to a preemption analysis. Bartlett, 570 U.S. at 491. Plaintiffs appear to assert Wells Fargo violated state common law with its allegedly fraudulent conduct. (Docket 90 at p. 14). "In violating a common-law duty, as surely as by violating a statutory duty, a party contravenes the law." Bartlett, 570 U.S. at 491. Plaintiffs' attempt to distinguish between common law and statutory law violations is unavailing.

### C. Plaintiffs' Section 19 ineligibility

Having found that Section 19 preempts plaintiffs' state law claims, the court must next determine whether each plaintiff's criminal history renders him or her ineligible for banking employment. If so, the individual plaintiff's claims must fail as preempted by Section 19. If Section 19 does not prohibit a plaintiff

from working for Wells Fargo, then his or her claims do not conflict with federal law and are not preempted. The court concludes each plaintiff's criminal history triggers Section 19's ban on banking employment.

### 1. De minimis waivers

As previously noted, Section 19 prohibits Wells Fargo from hiring anyone with a conviction for "any criminal offense involving dishonesty or a breach of trust or money laundering" without a FDIC waiver. 12 U.S.C. § 1829(a)(1)(A)(i). The same ban applies if an individual "agreed to enter into a pretrial diversion or similar program in connection with a prosecution" for a covered offense. Id. at § 1829(a)(1)(A).

The FDIC promulgated policy statements governing the process by which it issues Section 19 waivers.[9] The 1998 SOP governed the waiver process during the time Wells Fargo hired and fired plaintiffs. In that document, the FDIC defined in some detail Section 19's more ambiguous provisions. For example, it concluded a "conviction" meant a "conviction of record." 1998 SOP, 63 Fed. Reg. at 66,184. Any conviction "which has been completely expunged" does not trigger Section 19. Id. In 2011, the FDIC stated a conviction is completely expunged when "no one, including law enforcement, can be permitted access to the record even by court order under the state or federal law which was the basis

---

[9]The FDIC's Section 19 policy statements are not enforceable regulations. The FDIC noted in its 2018 policy statement that Section 19 does not give it "any rule-making authority to impose conditions or requirements on" a bank, confining its ability to interpret Section 19 solely to nonbinding administrative guidance. Modifications to the Statement of Policy Pursuant to Section 19 of the Federal Deposit Insurance Act, 83 Fed. Reg. 38,143, 38,144 (Aug. 3, 2018) ("2018 SOP").

of the expungement." Clarification of Statement of Policy, 76 Fed. Reg. 28,031, 28,033 (May 13, 2011) ("2011 SOP").

The FDIC defined "pretrial diversion or similar program" as a program "whether formal or informal" that "is characterized by a suspension or eventual dismissal of charges or criminal prosecution upon agreement by the accused to . . . noncriminal or nonpunitive alternatives." 1998 SOP, 63 Fed. Reg. at 66,184-185. Crimes of dishonesty or breach of trust are defined as follows:

> "Dishonesty" means directly or indirectly to cheat or defraud; to cheat or defraud for monetary gain or its equivalent; or wrongfully to take property belonging to another in violation of any criminal statute. Dishonesty includes acts involving want of integrity, lack of probity, or a disposition to distort, cheat, or act deceitfully or fraudulently, and may include crimes which federal, state or local laws define as dishonest. "Breach of trust" means a wrongful act, use, misappropriation or omission with respect to any property or fund which has been committed to a person in a fiduciary or official capacity, or the misuse of one's official or fiduciary position to engage in a wrongful act, use, misappropriation or omission.

> Whether a crime involves dishonesty or breach of trust will be determined from the statutory elements of the crime itself. All convictions for offenses concerning the illegal manufacture, sale, distribution of or trafficking in controlled substances shall require an application.

Id. at 66,185.

The FDIC also created an automatic waiver not requiring an application for certain de minimis disqualifying convictions. As modified by the 2011 SOP, the de minimis waiver qualifications for plaintiffs were as follows:

> Approval is automatically granted and an application will not be required where the covered offense is considered de minimis, because it meets all of the following criteria:

- There is only one conviction or program entry of record for a covered offense;

- The offense was punishable by imprisonment for a term of one year or less and/or a fine of $1,000 or less, and the individual did not serve time in jail;

- The conviction or program was entered at least five years prior to the date an application would otherwise be required; and

- The offense did not involve an insured depository institution or insured credit union.

2011 SOP, 76 Fed. Reg. at 28,033-034. Persons meeting the de minimis exception are still required to disclose their criminal history to their financial institution, even though they have an automatic Section 19 waiver. Id. at 28,034.

### 2. Plaintiffs' criminal histories

As noted above, no plaintiff had a FDIC waiver prior to his or her termination. (Docket 94 at ¶¶ 58, 81-83, 108, 131, 153, 176, 201, 223, 245 & 272). Therefore, they were ineligible to work at Wells Fargo—and correctly terminated—unless their criminal convictions were not Section 19-disqualifying or they were entitled to an automatic de minimis waiver. No plaintiff falls into these categories.

Plaintiff Stephanie Anderson entered into a pretrial diversion program following a 1998 charge for Minnesota theft. (Docket 83-20 at p. 6). She successfully completed the program and the charge was dismissed. Id. Theft is a crime of dishonesty and pretrial diversions trigger Section 19

disqualification.   18 U.S.C. § 1829(a)(1)(A)(i); 1998 SOP, 63 Fed. Reg. at 66,185.

The Minnesota theft statute Ms. Anderson was charged under carried a potential

sentence of imprisonment up to five years and/or a fine up to $10,000.[10]

(Docket 94 at ¶ 56).   Ms. Anderson is both Section 19-disqualified and ineligible

for a de minimis waiver.   2011 SOP, 76 Fed. Reg. at 28,033-034.

Mr. Dallman was convicted of Iowa theft in 1990 and was sentenced to five

years of prison and two years of probation, with the prison sentence suspended.

(Docket 83-32 at pp. 1-2).   Theft is a crime of dishonesty, disqualifying Mr.

Dallman from banking employment.   1998 SOP, 63 Fed. Reg. at 66,185.

Because Mr. Dallman was sentenced to more than one year of prison, he is not

eligible for a de minimis waiver.

Mr. Dary entered into a deferred judgment arrangement in 2001 regarding

an Iowa burglary charge.   (Docket 83-44 at p. 3).   Iowa burglary is a crime of

dishonesty because it involves unlawfully entering an occupied structure with

the intent "to commit a felony, assault or theft therein[.]"   See Iowa Code

§ 713.1; 1998 SOP, 63 Fed. Reg. at 66,185.   The FDIC, when it granted Mr. Dary

a Section 19 waiver after his termination, concluded the 2001 Iowa burglary

charge was Section 19-disqualifying.   (Docket 83-47 at p. 2-3).   Iowa third

degree burglary is a class D felony and carries a potential prison sentence of up

---

[10]The theft statute at issue contains a number of different penalties
depending on the value and nature of the stolen items.   Minn. Stat. § 609.52,
subd. 3.   No party submitted documentation of which subsection of the theft
statute governed Ms. Anderson's case.   However, the parties agreed that Ms.
Anderson's potential sentence is as stated, rendering her ineligible for a de
minimis waiver.

to five years and a fine of up to $7,500. Iowa Code §§ 713.6A, 902.9(1)(e). Mr. Dary was Section 19-disqualified when Wells Fargo terminated him and he remains ineligible for a de minimis waiver. 2011 SOP, 76 Fed. Reg. at 28,033-034.

Plaintiff Deanna Hobbs was convicted of Missouri theft in 2004 and her sentence of six months probation was suspended. (Docket 83-58 at p. 3). Her case was dismissed in 2005. Id. Theft is a crime of dishonesty, disqualifying Ms. Hobbs from banking employment. 1998 SOP, 63 Fed. Reg. at 66,185. The crime involved Ms. Hobbs' employment at a bank. (Docket 83-49 at pp. 3-5). Accordingly, Ms. Hobbs is not eligible for a de minimis waiver. 2011 SOP, 76 Fed. Reg. at 28,034.

Mr. Kruschke was convicted of Minnesota theft in 1995 and sentenced to ten days jail and six months probation. (Docket 83-70 at p. 3). Theft is a crime of dishonesty, disqualifying Mr. Kruschke from banking employment. 1998 SOP, 63 Fed. Reg. at 66,185. Because Mr. Kruschke served time in jail for his conviction, he is ineligible for a de minimis waiver. 2011 SOP, 76 Fed. Reg. at 28,034.

Mr. Engelby entered into a pretrial diversion program following a 1994 charge of Minnesota theft of a motor vehicle. (Docket 84-11 at p. 3). The case was dismissed in 1995 after he met the program conditions. Id. Theft is a crime of dishonesty and pretrial diversions trigger Section 19 disqualification. 18 U.S.C. § 1829(a)(1)(A)(i); 1998 SOP, 63 Fed. Reg. at 66,185. Theft of a motor

vehicle under Minnesota law carries a potential prison sentence of up to five years and a fine of up to $10,000. Minn. Stat. § 609.52, subd. 3(3)(d)(v). Because of these potential punishments, Mr. Engelby is ineligible for a de minimis waiver. 2011 SOP, 76 Fed. Reg. at 28,033-034.

Plaintiff Thomas English entered into a deferred judgment arrangement regarding a 1995 Montana felony theft charge. (Docket 84-25 at p. 5). The sentence was deferred for three years and the charge was dismissed in 1999. Id. Theft is a crime of dishonesty. 1998 SOP, 63 Fed. Reg. at 66,185. Under FDIC guidance, a deferred judgment is a pretrial diversion program triggering Section 19 disqualification. 18 U.S.C. § 1829(a)(1)(A)(i); 1998 SOP, 63 Fed. Reg. at 66,184-185.

Whether Mr. English is ineligible for a de minimis waiver requires a more detailed analysis. He was charged with felony theft on November 30, 1995, under Montana's general theft statute found at Montana Code Annotated § 45-6-301. (Docket 84-25 at p. 5). At that time, the theft of property valued under $500 carried a potential sentence of up to six months in county jail or a fine of up to $500. Insurance Fraud Protection Act, 1995 Mont. Laws Ch. 237 (S.B. 253) (effective July 1, 1995) (amending Mont. Code Ann. § 45-6-301). Because the maximum possible sentence was less than a year, a theft of under $500 would have been a misdemeanor under Montana law. Mont. Code Ann. § 45-2-101(42). Because it is not a felony, this cannot be the theft offense charged against Mr. English.

When Mr. English was charged with felony theft, a person convicted of theft of property exceeding $500 in value faced a potential prison sentence of up to 10 years or a fine of up to $50,000. Insurance Fraud Protection Act, 1995 Mont. Laws Ch. 237 (S.B. 253) (effective July 1, 1995) (amending Mont. Code Ann. § 45-6-301). These two categories—theft of property valued more or less than $500—were the only types of theft under the Montana statute in November of 1995. Id. As Mr. English was not charged with misdemeanor theft, the court concludes he was charged with theft of property over $500 in value. Because of the harshness of the potential penalties at the time Mr. English entered into the deferred judgment program, he is ineligible for a de minimis waiver. 2011 SOP, 76 Fed. Reg. at 28,033-034 (assessing waiver eligibility by punishment available at time of conviction or entry into a diversion program).

Plaintiff Ken Johnson was convicted of Minnesota felony theft by fraud and swindle in 1979. (Dockets 84-39 at p. 1 & 84-40 at p. 3). Theft is a crime of dishonesty disqualifying Mr. Johnson from banking employment. 1998 SOP, 63 Fed. Reg. at 66,185. The charges indicate the value of the property Mr. Johnson stole was over $2,500. (Docket 84-40 at p. 3). Under Minnesota law, the potential punishment for theft where the property is worth more than $1,000 but less than $5,000 is up to a five year prison sentence or up to a $10,000 fine. Minn. Stat. § 609.52, subd. 3(3)(a). Because of these potential punishments, Mr. Johnson is ineligible for a de minimis waiver. 2011 SOP, 76 Fed. Reg. at 28,033-034.

Mr. Sand was convicted of Arizona felony forgery in 1990.[11]   (Docket 84-50 at p. 2).   He was sentenced to two years of probation.   In 1991, the "charge type" was amended to misdemeanor theft.   Id.   In 1998, the judgment of guilt was vacated and the charges dismissed.   Id.   Theft and forgery are crimes of dishonesty disqualifying Mr. Sand from banking employment.   1998 SOP, 63 Fed. Reg. at 66,185.   Arizona misdemeanor theft is a class 1 misdemeanor which carries a potential jail sentence of up to six months and a fine of up to $2,500.   Ariz. Rev. Stat. §§ 13-707, 13-802, 13-1802(G).   Because the potential fine for this offense is more than $1,000, Mr. Sand is ineligible for a de minimis waiver.   2011 SOP, 76 Fed. Reg. at 28,033-034.

Ms. Demers was convicted of Minnesota theft of a motor vehicle in 1999.   (Docket 84-63 at p. 2).   She was sentenced to 30 days in jail and two years probation.   Id.   Theft is a crime of dishonesty, disqualifying Ms. Demers from banking employment.   1998 SOP, 63 Fed. Reg. at 66,185.   Because Ms. Demers served time in jail for her conviction, she is ineligible for a de minimis waiver.   2011 SOP, 76 Fed. Reg. at 28,034.

Each of the plaintiffs was both Section 19-disqualified and ineligible for a de minimis waiver.   To the extent they argue any of their convictions were "completely expunged"—and thus not a conviction of record triggering Section 19—the court rejects the argument.   "For an expungement to be considered

---

[11]Mr. Sand's background check is not entirely clear from the procedural history of his criminal case.   The provided records state "felony reduced to misdemeanor" and "forgery amended to theft," leading the court to believe he was originally convicted of felony forgery, which was then amended to misdemeanor theft in 1991.   (Docket 84-50 at p. 2).   This confusion does not affect the court's conclusion that Mr. Sand was Section 19-disqualified and ineligible for a de minimis waiver.

complete, no one, including law enforcement, can be permitted access to the record even by court order[.]" 2011 SOP, 76 Fed. Reg. at 28,033. As noted throughout this order, Wells Fargo accessed the disqualifying criminal records of each plaintiff through an FBI fingerprint-based background check. These records are not inaccessible, rendering the convictions documented in the records not "completely expunged" as the FDIC defines that term.[12]

## IV.    Conclusion

The court finds federal law required Wells Fargo to terminate Section 19-disqualified employees like plaintiffs. Consequently, attempts to punish Wells Fargo for following Section 19 with state common law fraud claims are preempted because they conflict with the will of Congress. Plaintiffs cannot maintain their preempted state law claims. The court accordingly must grant summary judgment to Wells Fargo.

### ORDER

For the reasons given above, it is

ORDERED that Wells Fargo's motion for summary judgment (Docket 80) is granted.

IT IS FURTHER ORDERED that plaintiffs' second amended complaint (Docket 29) is dismissed.

IT IS FURTHER ORDERED that Wells Fargo's motions to exclude plaintiffs' expert (Docket 45), to compel discovery responses (Docket 57), to compel

---

[12]In 2018, the FDIC modified its definition of complete expungement. 2018 SOP, 83 Fed. Reg. at 38,148. The 2018 definition did not apply to plaintiffs during their employment with or termination from Wells Fargo. The court further finds the new definition would not make any plaintiff eligible for a de minimis waiver.

deposition testimony (68), and to quash a deposition (Docket 76) are denied as moot.

Dated September 30, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE